**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

ROBERT W. FRAZIER,                    )
                                      )
      Plaintiff,                  )
                                      )
v.                                    )          **CIVIL ACTION NO. 5:06-0717**
                                      )
MICHAEL J. ASTRUE,                    )
Commissioner of Social Security,      )
                                      )
      Defendant.                  )

<u>**PROPOSED FINDINGS AND RECOMMENDATION**</u>

      This is an action seeking review of the final decision of the Commissioner of Social Security

denying the Plaintiff's application for supplemental security income (SSI), under Title XVI of the

Social Security Act, 42 U.S.C. §§ 1381-1383f. By Standing Order, this case was referred to the

undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit

Proposed Findings of Fact and Recommendation for disposition, all pursuant to 28 U.S.C.

§ 636(b)(1)(B).  Presently pending before the Court are Plaintiff's Motion for Summary Judgment

and Memorandum in Support (Document Nos. 7 and 8.) and Defendant's Brief in Support of Motion

for Judgment on the Pleadings (Document No. 9.).

      The Plaintiff, Robert Frazier (hereinafter referred to as "Claimant"), filed an Application for

SSI on June 27, 2003, alleging disability as of January 1, 1999, due to "[a]rthritis, depression,

anxiety, tumors, mouth infections." (Tr. at 55 - 57, 68.) The claims were denied initially on

September 12, 2003, and upon reconsideration on December 15, 2003.  (Tr. at 30 - 32, 39 - 41.) On

March 2, 2004, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 43 -

44.) A hearing was held before the Honorable Lawrence E. Shearer on April 19, 2005. (Tr. at 558 -

581.) On May 17, 2005, the ALJ issued a Notice of Dismissal finding that Claimant had filed his request for a hearing after the sixty day period after the SSA's reconsideration decision had elapsed. (Tr. at 225 - 227.) By Order dated June 28, 2005, the Appeals Council vacated the ALJ's Notice of Dismissal and remanded the case to the ALJ and required that "the Administrative Law Judge will give the claimant another opportunity for a hearing." (Tr. at 235 - 236.) ALJ Shearer held a further hearing on December 19, 2005. (Tr. at 551 - 557.) The hearing was continued, however, in view of Claimant's filing of a significant number of documents in addition to those already in the record. ALJ Shearer held a further hearing on March 17, 2006.  (Tr. at 523 - 550.) By Decision dated April 11, 2006, ALJ Shearer determined that Claimant was not entitled to benefits. (Tr. at 17 - 26.) The ALJ's Decision became the final decision of the Commissioner on July 28, 2006, when the Appeals Council denied Claimant's request for review.  (Tr. at 9 - 11.) On September 18, 2006, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (Document No. 1.)

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability.  See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims.  20 C.F.R. §§ 404.1520, 416.920 (2002).  If an individual is found "not disabled" at any step, further inquiry is unnecessary.  Id. §§ 404.1520(a), 416.920(a).  The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment.  Id.

§§ 404.1520(b), 416.920(b).  If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment.  Id. §§ 404.1520(c), 416.920(c).  If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4.  Id. §§ 404.1520(d), 416.920(d).  If it does, the claimant is found disabled and awarded benefits.  Id.  If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work.  20 C.F.R. §§ 404.1520(e), 416.920(e).  By satisfying inquiry four, the claimant establishes a *prima facie* case of disability.  Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).  The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2002).  The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy.  McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those

sections provide as follows:

> *(c) Rating the degree of functional limitation.* (1) Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
>
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
>
> (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.
>
> (4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).[*] Fourth, if the claimant's impairment(s) is/are

---

[*] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or

deemed severe, the SSA compares the medical findings about the severe impairment(s) and the

rating and degree and functional limitation to the criteria of the appropriate listed mental disorder

to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R.

§§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe

mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the

Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The

Regulation further specifies how the findings and conclusion reached in applying the technique must

be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written
> decision issued by the administrative law judge and the Appeals Council must
> incorporate the pertinent findings and conclusions based on the technique. The
> decision must show the significant history, including examination and laboratory
> findings, and the functional limitations that were considered in reaching a conclusion
> about the severity of the mental impairment(s). The decision must include a specific
> finding as to the degree of limitation in each of the functional areas described in
> paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because

he had not engaged in substantial gainful activity at any time relevant to his decision. (Tr. at 20.)

---

intermittent persistence of specified symptoms and (B) they result in two of the following: marked
restriction of activities of daily living; marked difficulties in maintaining social functioning; marked
difficulties in maintaining concentration, persistence or pace; or repeated episodes of
decompensation, each of extended duration or (C) there is a medically documented history of a
chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation
of ability to do basic work activities with symptoms currently attenuated by medication or
psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease
process resulting in such marginal adjustment that a minimal increase in mental demands or change
in the environment would cause decompensation; or (3) a current history of 1 or more years'
inability to function outside a highly supportive living arrangement, and the indication of a
continued need for such an arrangement. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.06, provides
essentially the same framework for determining the severity of anxiety related disorders.

Under the second inquiry, the ALJ found that during the relevant period Claimant suffered from polysubstance mood disorder which he regarded as severe and no severe physical impairments. (Id.)[2] At the third inquiry, the ALJ concluded that Claimant's impairment did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 21.) The ALJ found that Claimant had "the residual functional capacity to physically perform work at all exertional levels. Due to polysubstance abuse, the claimant would not be able to maintain concentration for an 8 hour day and would not be able to meet the attendance requirements of substantial gainful activity." (Tr. at 23.) The ALJ further found that Claimant was unable to perform his past relevant work, was an individual closely approaching advanced age with a limited education and "his transferrable skills are not relevant in the presence of polysubstance abuse." (Tr. at 23 - 24.) The ALJ found that "[c]onsidering the claimant's age, education, work experience, and residual functional capacity based on all of the impairments, including the substance use disorder(s), there are no jobs that exist in significant numbers in the national economy that the claimant can perform . . .." (Tr. at 24.) The ALJ then went through the sequential analysis assuming that Claimant stopped the substance use. ALJ Shearer concluded at step two that "[i]f the claimant stopped the substance use, the remaining limitations would cause more than a minimal impact on the claimant's ability to perform basic work activities; therefore, the claimant would continue to have severe impairment or combination of impairments." (Id.) The ALJ stated more specifically that "[w]hen the claimant stops polysubstance abuse, treatment notes indicate at most only moderate mood disorder without significant symptoms . . .." (Id.) The ALJ found at step three that absent Claimant's substance use, he would not have an

_____

[2] Claimant stipulated that he was physically able to perform the full range of work. (Tr. at 528.)

6

impairment or combination of impairments which met or medically equaled any listed impairment.
(Id.) The ALJ further concluded that Claimant "would have the residual functional capacity to
perform a limited range of work at all exertional levels. The claimant could perform simple tasks
that did not require more than borderline intellectual functioning." (Tr. at 25.)  The ALJ then found
that if Claimant stopped substance use, he could perform his past relevant work as a security guard.
(Id.) The ALJ concluded therefore that "[b]ecause the claimant would not be disabled if he stopped
the substance use, the claimant's substance use disorder(s) is a contributing factor material to the
determination of disability. Thus, the claimant has not been disabled within the meaning of the
Social Security Act at any time through the date of this decision." (Id.) On this basis, benefits were
denied.  (Tr. at 26.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying
the claim is supported by substantial evidence.  In Blalock v. Richardson, substantial evidence was
defined as

> evidence which a reasoning mind would accept as sufficient to support a particular
> conclusion. It consists of more than a mere scintilla of evidence but may be
> somewhat less than a preponderance. If there is evidence to justify a refusal to direct
> a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d
640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving
conflicts in the evidence.  Hays v.Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).  Nevertheless, the
Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the
record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch,
495 F.2d 396, 397 (4th Cir. 1974).

Claimant's Background

Claimant was born on April 4, 1954, and was 51 years old when ALJ Shearer issued his Decision (April 11, 2006). (Tr. at 23, 55, 564.) Claimant has an eighth grade education. (Tr. at 72, 566.)  Claimant indicated that he had worked as a carpenter, coal miner and security guard. (Tr. at 69.)

The Medical Record

The Court has reviewed all evidence of record, including the medical evidence, and will discuss it below as it relates to Claimant's arguments.

Claimant's Challenges to the Commissioner's Decision and the Commissioner's Response.

Claimant argues first that the ALJ improperly discounted the opinions of treating/examining sources that he suffered from a depressive disorder and a bipolar disorder in view of his history for substance abuse. Claimant points out that Ms. Samantha Mann and Dr. Ahmed Faheem found that he had a bipolar disorder. Claimant further states that the ALJ did not mention Dr. Faheem's diagnosis of "major affective illness which could be bipolar in nature." Claimant asserts that examining sources "including Dr. Faheem, diagnosed not only a history of substance abuse but a depressive [dis]order and a possible bipolar disorder. There is no medical evidence in the . . . record . . . to dispute these findings. * * * [T]he ALJ relied upon his own reading of a medical manual for the determination that the claimant's drug use prevented him from suffering any other severe impairment. Having made this determination, he then discredited the reports of all examiners who found that the claimant's impairments of depression and other affective disorders were severe without regard to the evidence. The record . . . demonstrates that after the claimant's initial request for hearing was denied he did not engage in recreational drug abuse but attempted suicide for which

8

he was treated by hospitalization. The examiners there were well aware of the claimant's history of substance abuse as well as the actual reasons for his admission. The hospital nonetheless concluded that he suffered from depression and an affective disorder which required continual treatment." Claimant further challenges the ALJ's conclusion that he would be able to perform substantial gainful activity if he stopped substance abuse stating that "[h]e again cited no evidence to support this conclusion. Having made this unsupported conclusion he then disregarded all the other evidence in the record . . . including the report of Mari Sullivan Walker that the claimant was disabled quite apart from his abuse problems because they disagreed with his ultimate conclusion. In essence, the ALJ stated that because the claimant had a history of substance abuse he was immunized from ever suffering any other severe impairment. This is not only unsupported by but contradicted by the complete record in the claim." (Document No. 8.)

The Commissioner contends that the ALJ's decision is supported by substantial evidence. (Document No. 9.)

## **ANALYSIS**

The Regulations provide that "[r]egardless of its source, we will evaluate every medical opinion we receive." 20 C.F.R. § 404.1527(d). That Regulation provides further that "[u]nless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion." In evaluating the opinions of treating physicians, the ALJ generally must give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. § 404.1527(d)(2)(2000). Nevertheless, a treating physician's opinion is afforded "controlling weight only if two conditions

are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence." Ward v. Chater, 924 F. Supp. 53, 55(W.D.Va. 1996); see also, 20 C.F.R. 404.1527(d)(2)(2000). The opinion of a treating physician must be weighed against the record as a whole when determining eligibility for benefits. 20 C.F.R. § 404.1527(d)(2)(2000). Ultimately, it is the responsibility of the ALJ, not the Court, to review the case, make findings of fact, and resolve conflicts of evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th cir. 1990). As noted above, however, the Court must not abdicate its duty to scrutinize the record as a whole to determine whether the ALJ's conclusions are rational. Oppenheimer v. Finch, 495 F.2d 396,397 (4th Cir. 1994).

If the ALJ determines that a  treating physician's opinion should not be afforded controlling weight, the ALJ must then analyze and weigh all the evidence of record, taking into account the factors listed in 20 C.F.R. §§ 404.1527 and 416.927(d)(2)-(6).  These factors include: (1) length of the treatment relationship and frequency of evaluation, (2) nature and extent of the treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6) various other factors. Additionally, the Regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."  Id. § 416.927(d)(2).

Generally speaking with respect to medical opinions, the ALJ gives more weight to opinions of treating physicians than to those of examining and non-examining physicians. 20 C.F.R. § 1527. As between the opinions of examining and non-examining physicians, the ALJ will generally give more weight to the opinion of examining physicians. 20 C.F.R. § 404.1527(d)(1).

Pursuant to 42 U.S.C. §§ 423(d)(2)(C) and 1382c(a)(3)(J), a claimant found to be "disabled" after employment of the five-step sequential evaluation discussed above will not be considered disabled within the meaning of the Social Security Act "if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." The "key factor" in determining whether alcoholism or drug addiction is a "material" factor is whether the claimant would still meet the definition of disabled under the Act if she stopped using alcohol. 20 C.F.R. §§ 404.1535(b)(1) and 416.935(b)(1). The Regulations provide that, where there is evidence of drug addiction or alcoholism, the Commissioner must identify which physical and mental limitations would still remain assuming the claimant did not use drugs or alcohol. Then, the Commissioner must analyze whether these limitations would be disabling by themselves. 20 C.F.R. §§ 404.1535(b)(2) and 416.935(b)(2).[3] If the claimant's

---

[3] 20 C.F.R. § 404.1535 provides as follows:

How we will determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability.

(a) General.  If we find that you are disabled and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability.
(b) Process we will follow when we have medical evidence of your drug addiction or alcoholism.

(1) The key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol.

(2) In making this determination, we will evaluate which of your current physical and mental limitations, upon which we based our current disability determination, would remain if you stopped using drugs or alcohol and then determine whether any or all of your remaining limitations would be disabling.

(i) If we determine that your remaining limitations would not be disabling, we will find that your drug addiction or alcoholism is a

11

remaining limitations would still be disabling independent of his drug addiction or alcoholism, then drug addiction or alcoholism will not be a contributing factor material to disability and he will be entitled to benefits. 20 C.F.R. §§ 404.1535(b)(2)(ii) and 416.935(b)(2)(ii). If, however, the Commissioner determines that the claimant's remaining limitations would not be disabling, then drug addiction or alcoholism will be considered a "material" factor and he will not be entitled to benefits. 20 C.F.R. §§ 404.1535(b)(2)(i) and 416.935(b)(2)(i). The claimant bears the burden of proving that his alcoholism or drug addiction is not a contributing factor material to disability.

Apparently, Claimant was hospitalized in late 2002 as a consequence of a drug overdose. The record contains a January 3, 2003, Addiction Severity Index Summary of Ms. Kay Lambert, a substance abuse counselor. (Tr. at 219 - 224.) Ms. Lambert wrote that Claimant reported that he had used alcohol heavily until 1994, had used hydrocodone for approximately two years and had smoked marijuana since he was fourteen years old. Claimant reported that he had smoked marijuana last about three weeks before meeting with Ms. Lambert and felt "that cannabis is his major problem." (Tr. at 221.) The record contains Ms. Lambert's further Addiction Severity Index Summaries of April 10, 2003, (Tr. at 204 - 209.), August 12, 2003 (Tr. at 190 - 195.), November 4, 2003 (Tr. at 178 - 183.) and February 4, 2004 (Tr. at 168 - 173.), all indicating that Claimant last used marijuana in December, 2002. Throughout the period, Ms. Lambert indicated that Claimant had a "[c]onsiderable problem" and needed treatment respecting his medical condition and psychiatric

---

contributing factor material to the determination of disability.
(ii) If we determine that your remaining limitations are disabling, you are disabled independent of your drug addiction or alcoholism and we will find that your drug addiction or alcoholism is not a contributing factor material to the determination of disability.

condition and had a "[c]onsiderable problem" at first with respect to his drug abuse (Tr. at 219, 204.) which became "moderate" (Tr. at 190, 178.) and then a "slight problem, Drug treatment is a low priority." (Tr. at 168.) Respecting employment, Ms. Lambert found "[n]o real problem, employment counseling not indicated." The record also contains Physician Progress Notes indicating Dr. George Ide's treatment of Claimant for his psychological problems from January, 2003, through November, 2005. (Tr. at 159 - 215, 485 - 512.) In an Initial Psychiatric Evaluation dated January 14, 2003, Dr. Ide diagnosed "Depressive Disorder, NOS, Polysubstance dependence, by history." Dr. Ide found that Claimant had a GAF of 50[4] and his prognosis was "fair". Dr. Ide continued Claimant on Vistaril, Remeron, Lexapro and Soma. (Tr. at 216 - 218.) It appears that Dr. Ide prescribed other medications from time to time including Seroquel in October, 2003. (Tr. at 186.) No drug abuse is indicated in Dr. Ide's records. Dr. Ide maintained the same diagnosis and found Claimant's GAF in the low to mid 50s throughout the period.

---

[4] The DSM-IV Multiaxial Assessment Diagnosis consists of the following:

Axis I: Clinical Disorders
Axis II: Personality Disorders and Mental Retardation
Axis III: General Medical Conditions
Axis IV: Psychosocial and Environmental Problems
Axis V: Global Assessment of Functioning (GAF)

The Global Assessment of Functioning Scale is a system used by clinicians to indicate their overall judgment of psychological, social and occupational functioning. It is therefore a system for measuring the overall severity of psychiatric disturbances. The GAF Scale runs from 100 (no symptoms and superior functioning in a wide range of activities) to 0 (persistent danger of severely hurting self or others and inability to maintain minimal personal hygiene). A GAF score between 41 and 50 indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals frequent shoplifting) or any serious impairment in social, occupational or school functioning (e.g., no friends, unable to keep a job.). A GAF score between 51 and 60 indicates the following symptom severity and level of functioning: Moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or some difficulty in social, occupational or school functioning (e.g., few friends, conflicts with co-workers).

DDS physician Dr. Debra Lilly completed a Psychiatric Review Technique form on September 8, 2003, in view of evidence that Claimant suffered from an affective disorder and a substance addiction disorder finding that Claimant suffered from a severe impairment which was not expected to last twelve months. (Tr. at 118 - 131.) Dr. Lilly found that Claimant had mild restriction of activities of daily living, difficulties in maintaining social functioning and difficulties in maintaining concentration, persistence or pace and had one or two episodes of decompensation. (Tr. at 128.)

Claimant was admitted at Raleigh General Hospital on June 7, 2005, having attempted suicide by taking an overdose of Seroquel. A urine drug screen was positive for THC (marijuana), oxycodone and opiates. (Tr. at 308.) Dr. Safiullah Syed examined Claimant on June 8, 2005, and stated in a Consultation note that "[t]he documents indicate bipolar disorder . . .." Dr. Syed diagnosed "[m]ajor affective disorder with drug overdose. Rule out bipolar affective disorder." Dr. Syed found Claimant's "GAF equal to 30." Dr. Syed arranged for Claimant's admission at Appalachian Regional Hospital. (Tr. at 305.) Claimant was discharged from Raleigh general Hospital on June 10, 2005, with a final diagnosis of "[m]ajor depression disorder with drug overdose. Possible bipolar affective disorder." He was deemed "[s]table for transfer" to Appalachian Regional Hospital. (Tr. at 298.) Claimant was admitted at Appalachian Regional Hospital on June 10, 2005. Dr. Ahmed Faheem diagnosed '[m]ajor affective illness, bipolar versus schizoaffective disorder" and states that Claimant's "[h]ighest level of adaptive functioning currently appears to be 30 on the GAF scale." (Tr. at 479.) On June 12, 2005, Samantha Mann, M.A., performed a psychological evaluation and diagnosed "[b]ipolar disorder, rule out schizoaffective disorder." Ms. Mann found Claimant's GAF at 35. (Tr. at 476 - 477.) He was discharged on June 14, 2005. In

14

his Discharge Summary, Dr. Safiullah Syed diagnosed major affective disorder, found Claimant's GAF at 60 and prescribed Paxil, Trazadone and Lortab. (Tr. at 482.)

At Claimant's attorney's request, Mari Sullivan Walker, M.A., performed a psychological evaluation and testing in December, 2005. In her January 18, 2006, Psychological Evaluation and Testing Report, Ms. Walker diagnosed "Bipolar Disorder, mixed, in partial remission" and "Dysthymic Disorder". She found Claimant's GAF to be at 50. (Tr. at 516 - 519.)

ALJ Shearer determined that Claimant's only severe impairment was polysubstance induced mood disorder. (Tr. at 20 - 21.) The ALJ then proceeded to determine whether Claimant's severe impairment met or equaled a listed impairment considering Listing 12.09 pertaining to substance addiction disorders[5] and 12.04 pertaining to affective disorders. Thus, ALJ Shearer performed a rating analysis and found that "[t]he claimant's medical evidence . . . establishes depressive symptoms that result in no more than moderate functional limitations. * * * The evidence establishes that even with the claimant's substance abuse, his mental impairments are not of listing level

---

[5] Listing 12.09 provides as follows:

   *Substance addiction Disorders.* Behavioral changes or physical changes associated with the regular use of substances that affect the central nervous system.
   The required level of severity for these disorders is met when the requirements in any of the following (A through I) are satisfied.
      A. Organic mental disorders. Evaluate under 12.02.
      B. Depressive syndrome. Evaluate under 12.04.
      C. Anxiety disorders. Evaluate under 12.06.
      D. Personality disorders. Evaluate under 12.08.
      E. Peripheral neuropathies. Evaluate under 11.14.
      F. Liver damage. Evaluate under 5.05.
      G. Gastritis. Evaluate under 5.04.
      H. Pancreatitis. Evaluate under 5.08.
      I. Seizures. Evaluate under 11.02 or 11.03.

severity. The claimant has at most mild to moderate limitations in his activities of daily living, in his concentration, persistence, or pace and in his ability to maintain social interactions. The claimant's psychiatric hospitalizations have been caused by substance abuse." (Tr. at 21.) Considering the 2005 diagnoses of consultative sources Samantha Mann, M.A., and Mari Sullivan Walker, M.A., of bipolar disorder, ALJ Shearer stated as follows (Tr. at 22 -23.):

> Although two consultative counselors assessed the claimant with bipolar disorder, the claimant's treating physician, Dr. Ide, has consistently diagnosed the claimant with depressive disorder, not otherwise specified. According to the Diagnostic and Statistical Manual of Mental Disorders, a diagnosis of bipolar disorder is not an appropriate diagnosis in the presence of substance abuse. The Diagnostic and Statistical Manual of Mental Disorders (DSM-IV) states that bipolar disorder cannot be appropriately diagnosed in the presence of polysubstance abuse. Polysubstance abuse and withdrawal symptoms can result in mood swings that mimic bipolar disorder symptoms. Since the claimant has a history of polysubstance abuse and received inpatient psychiatric treatment in December of 2002 and June of 2005 for drug overdoses, according to DSM-IV, it is not appropriate to diagnose bipolar disorder.

The ALJ gave controlling weight to Dr. Ide's opinions stating that "Dr. Ide diagnosed the claimant with depressive disorder and described him as interacting well, demonstrating logical thought process, a fair memory, intact judgment, and fair insight, in the absence of severe polysubstance abuse." (Tr. at 23.) The ALJ found the opinions of Ms. Mann and Walker inconsistent with their own findings and other evidence of record and gave them no weight. (Tr. at 22, 23.)

The undersigned finds that ALJ Shearer did not discount the opinions of medical sources that Claimant suffered from a depressive disorder as Claimant asserts. It is clear from the ALJ's analysis under Listings 12.09 and 12.04 that the ALJ considered Claimant's depression as coinciding with and to some extent a consequence of his drug abuse which continued as Claimant's SSI Application was pending. No medical source indicated that Claimant's substance addiction was independent and non-contributing with respect to his depressed mood. The ALJ's findings in this regard were

16

supported by substantial evidence. The undersigned further finds ALJ Shearer's adoption of Dr. Ide's opinions as controlling and rejection of medical source opinions that Claimant suffered from a bipolar disorder consistent with applicable law and Regulations and supported by substantial evidence. The record includes documentation of Dr. Ide's diagnosis, observations and treatment of Claimant for nearly three years. Dr. Faheem and Ms. Mann developed their opinions of bipolar disorder immediately following Claimant's Seroquel overdose in June, 2005. Finally, consulting source Ms. Walker found "[b]ipolar disorder, mixed, in partial remission" in late 2005. The undersigned finds that it is not clear at all from the record that Claimant suffered from a bipolar disorder. Additionally, the undersigned finds that ALJ's Shearer's analysis is in conformity with that prescribed by the Regulations. The ALJ determined in view of Claimant's substance abuse and depressed mood that Claimant was unable to perform his past relevant work or any work which existed in the national economy but could perform his past relevant work if he stopped substance abuse.

## PROPOSAL AND RECOMMENDATION

It is therefore hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **DENY** the Plaintiff's Motion for Summary Judgment, **GRANT** the Defendant's Motion for Judgment on the Pleadings, and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnston, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have three days (mailing/service) and then

ten days (filing of objections) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).  Copies of such objections shall be served on opposing parties, District Judge Johnston, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to counsel of record.

Date: August 29, 2007.

R. Clarke VanDervort
United States Magistrate Judge